**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CIVIL ACTION**
**NO. 06-190-S**

**NORTHERN INSURANCE COMPANY OF NEW YORK AND NICHOLAS PICCHIONE, II,**
**Plaintiffs,**

**VS.**

**ALBIN MARINE, INC., STANDISH BOAT YARD, INC., AND POINT JUDITH MARINA, LLC,**
**Defendants.**

## DEFENDANT'S PRETRIAL MEMORANDUM

This matter involves a property damage action brought by the owner and insurer of the M/V EVEREADY, A 1995 35' Albin motor vessel. Defendant Standish Boat Yard, Inc. was the seller of the vessel and a distributor of Albin Marine vessels. The vessel sank at the dock at Point Judith Marina on April 25, 2005, almost ten (10) years after the vessel was originally sold to Mr. Picchione II.

## I. DEFENDANTS' EVIDENCE

1. KENNETH HILTON-FACTUAL

Mr. Hilton is the principal at Standish Boat Yard, Inc. He will testify as to the dealings he had with Plaintiff Nicholas Picchione II, the characteristics of the vessel, and the additions to the vessel that were made

at the request of the Plaintiff. He will also testify as to his experience with Albin vessels and the quality of their construction.

2. FRED W. A. PETERS-FACTUAL

Mr. Peters was the principal at Albin Marine, the manufacturer of the M/V EVEREADY. He will testify as to the construction methods and the reasons that Albin did not include anti-syphon loops in the vessels manufactured in 1995 and the reason why there was not chaffing around the exhaust hose that leads from the starboard engine.

3. PLAINTIFF NICHOLAS PICCHIONE II-FACTUAL

Plaintiff Nicholas Picchione II will testify as to the events involved in the purchase of the vessel, his usage of the vessel and the events leading to the sinking of the vessel on April 25, 2005.

4. JOSEPH STROKER-FACTUAL

Mr. Stroker was an employee of Point Judith Marina, LLC. He performed work on the M/V EVEREADY on or about April 22, 2005. This work included shutting off the bilge pump to the vessel because the motor was continuously running. Mr. Stroker will also testify that in his experience some vessels had anti-syphon loops and some did not. He did not find the lack of an anti-syphon loop to be unusual.

5. DON VIVENZIO-FACTUAL

Mr. Vivenzio is the General Manager at Point Judith Marina. He will testify as to the custom and practice at Point Judith Marina, his knowledge of the use of the vessel by Plaintiff Nicholas Picchione II, and the events that resulted in the sinking of the vessel on April 25, 2005.

6. KEVIN CLARK-EXPERT

Mr. Clark will render an opinion as to the cause of the sinking of the M/V EVEREADY.

## II. LEGAL MEMORANDUM

This matter involves a products liability action brought by the owner/insurer of the M/V EVEREADY as a result of the sinking of the vessel at its dock at Point Judith Marina on April 25, 2005. Defendant Standish Boat Yard, Inc. was the seller of the vessel to Plaintiff Nicholas Picchione II on or about July 3, 1996. Plaintiff Nicholas Picchione II used the vessel for almost nine (9) years for offshore fishing, including grounding the vessel on two separate occasions.

Plaintiff Nicholas Picchione II purchased the vessel in 1996 from Standish Boat Yard, Inc. after sinking his previous vessel, a 28’ Albin. After the vessel was

purchased, a tuna tower and a generator were installed by Standish, using criteria provided by Albin Marine. At the end of the 1996 boating season, some additional ballast was added to the vessel under specifications provided by Albin Marine. Further, during the 1996-1997 boating season, maintenance of the vessel was performed at Standish Boat Yard, Inc. Thereafter, all maintenance work on the vessel was done by Point Judith Marina or by other contractors at the request of the Plaintiff Nicholas Picchione II. The evidence will establish that it is the vessel owner’s requirement to check all hoses every five (5) years and change those hoses that need replacement.

When the vessel was commissioned for the 2005 boating season at Point Judith Marina, one of the workers at the marina went aboard to do some work. He noted that the bilge pump in the engine room did not shut off, so he shut off the switch for that pump, completely disabling that bilge pump. He noted it on the work order, but no notice was given to the vessel owner of such condition. It is disputed whether the switches to the other two bilge pumps were also disabled.

Mr. Picchione II attended the vessel on Saturday, April 23, 2005 and performed work to ready the vessel for the upcoming boating season. He testified that he was not

aware that the bilge pump had been shut off. He did not attend the vessel on Sunday, April 24, 2005, going golfing instead. On the morning of April 25, 2005 the vessel was found sunk at its slip at Point Judith Marina.

Plaintiff has brought a multiple count complaint. The allegations against Defendant Standish Boat Yard, Inc. are for products liability, negligence, and breach of warranty of fitness for a particular purpose and merchantability. In *East River Steamship Co. v. TransAmerica DeLeval Inc., 476 U.S. 858 (1986),* the court held that where the only damage sought is damage to the product itself, then there is no cause of action for negligence and the buyer is limited to his recovery under the Uniform Commercial Code. "A manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself….Damage to a product itself is most naturally understood as a warranty claim." *East River* has been applied to non-commercial vessels. *Reliance Ins.Co. v. Carver Boat Corp., 1997 AMC 2522 (D.Md. 1997); Stanton v. Bayliner Marine Corp., 123 Wn.2nd 64 (1993); Karshan v. Mattituck Inlet Marine & Shipyard, Inc. 785 F.Supp. 363 (E.D.N.Y. 1992).* Thus, there is no

cause of action for products liability and negligence, as a matter of law.

Plaintiff's causes of action are for breach of warranty of implied merchantability and breach of implied warranty of fitness for a particular purpose. There are no applicable express warranties and Plaintiff has not plead a cause of action for breach of express warranty.

If a seller is a "merchant" who regularly deals in sale of goods of that kind, the law implies in each sale a warranty that the goods will be "merchantable"—fit for the ordinary purpose for which such goods are used. R.I.G.L. §6A-2-314(c). Any defect or deficiency in the particular item which makes it unfit for its ordinary uses creates liability. In *Jet Boats, Inc. v. Puget Sound Bank, 44 Wn.App.32, 721 P.2nd 18 (1986),* the court held that there was no breach of the warranty of merchantability although there were several defects at the time of delivery because the vessel was generally of a quality to be considered merchantable.

For the warranty of fitness for a particular purpose to apply, R.I.G.L.§6A-2-315 requires that the seller at the time of contracting has reason to know of the particular purpose and that the "buyer is relying on the seller's skill or judgment to select or furnish suitable

goods." There is no evidence here that the Plaintiff relied on any advice by Defendant Standish Boat Yard, Inc. when he purchased the vessel. Thus, there is no warranty of fitness for a particular purpose.

Lastly, the defendant submits that the negligence of the vessel owner and/or Point Judith Marina constitutes an ***intervening and superseding cause*** such that even if Standish Boat Yard, Inc. were liable, such intervening and superseding cause excuses any breach of implied warranty by Standish Boat Yard, Inc. In *Exxon Co. v. Soufec, Inc.*, 517 U.S. 830 (1996), the United States Supreme Court held that the preceding negligence of a tortfeasor shall not be considered a proximate cause of a harm and is not considered an apportionment of fault if it is determined that the act of a third person (1) brings about harm different in kind from that which would otherwise have resulted from the actor's negligence; (2) the operation or the consequences of the intervening act or force were extraordinary rather than normal and could not be reasonably foreseeable by the original actor; and (3) the intervening force operated independently of any situation created by the actor's negligence. Defendant notes that this doctrine is an available defense even if recovery against the intervening tortfeasor is precluded. See,

e.g., *In re September 11 Litigation, 280 F.Supp.2*$^{nd}$ *279 (S.D.N.Y. 2003).* In that case, the Court held that it was an issue for the factfinder as to whether the owner of the World Trade Center could be liable to victims if the actions of the terrorists were "reasonably foreseeable." *Id.at 302.* The application of the doctrine was not precluded by the fact that recovery against the terrorists was unlikely, in that they were all deceased. The defendant asserts that the actions of the vessel owner and/or Point Judith Marina satisfy all requirements contained in the *Exxon* decision.

**III. <u>LIST OF EXHIBITS</u>**

A. Photographs of the vessel

B. Exhibits from the deposition of the plaintiff

C. Exhibits for the deposition of Joseph Stroker

D. Documentation from Standish Boat Yard, Inc. involving the purchase of the vessel and the maintenance records for the M/V EVEREADY.

E. Photographs of the vessel aground.

F. Exhibits from the deposition of Kenneth Hilton.

G. Exhibits from the deposition of Don Vivenzio

H. Maintenance records from Point Judith Marina for the M/V EVEREADY

I. Photographs of the vessel taken by any experts in this matter.

J. Any appurtenances of the vessel that have been retained by the experts in this matter.

K. Brochures and Plans for the 35’ Albin motor vessel.

L. Curriculum Vitae for Kenneth Clark

**IV. <u>MOTIONS TO DISMISS DEFENDANT AND IN LIMINE</u>**

The defendants anticipate filing a Motion to Dismiss the claims of products liability and negligence, as being barred by the *East River* doctrine. Defendant also anticipates filing a Motion in Limine as to the opinions of Plaintiff’s expert William Robbins based upon his qualifications.

**V. <u>JURY INSTRUCTIONS AND SPECIAL VERDICT FORM</u>**

This matter is to be tried non-jury.

**VI. <u>ANTICIPATED LENGTH OF TRIAL</u>**

Defendant anticipates the matter will take three (3) trial days assuming a 0900-1600 trial schedule.

**VII. <u>ADDITIONAL MATTERS</u>**

Defendant is not aware of any additional matters that will aid the court at this time.

Respectfully submitted,
By their attorneys,

**CLINTON & MUZYKA, P.C.**

“/S/Robert E. Collins”
**Thomas J. Muzyka**
**Pro Hac Vice**
**Robert E. Collins**
**RI BAR NO: 2951**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed **Defendant’s Pretrial Memoranda** on April 25, 2008. This document is available for viewing and downloading from the Court’s Electronic Case Filing System. Service on the above counsel has been effectuated by electronic means.

“/s/Robert E. Collins”
Robert E. Collins