# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NORTHERN INSURANCE COMPANY OF NEW YORK AND NICHOLAS PICCHIONE II<br>Plaintiffs<br>v.<br>ALBIN MARINE, INC.; STANDISH BOAT YARD, INC. and POINT JUDITH MARINA, LLC.<br>Defendants | CIVIL ACTION NO. 06-190-S |

## OPPOSITION OF POINT JUDITH TO PLAINTIFFS' MOTION *IN LIMINE*

Defendant Point Judith Marina, LLC ("Point Judith") hereby opposes plaintiffs' motion *in limine*. Briefly, the plaintiffs are seeking to be able to use newly-disclosed expert testimony, and at the same time deny their opponents the opportunity to present testimony in response. This is fundamentally unfair, especially coming at a time when the plaintiffs are also pursuing a motion to amend their complaint — a motion filed a mere 35 days before the start of trial.

On April 3, 2008, the plaintiff delivered to the defendants an expert witness disclosure as to William Robbins. This document was the first occasion on which the plaintiffs identified *any* expert allegations directed against Point Judith.

Point Judith arranged to depose Mr. Robbins on April 24th — the first day after counsel for Standish were finished with a trial before this very court. On that same date, plaintiff's counsel finally dropped his refusal to allow Point Judith's expert witness — marine surveyor Dennis Layfield — to inspect the vessel in light of the

April 3 disclosures of Mr. Robbins. In addition, plaintiffs' motion to amend their complaint had intervened — on April 7, 2008 — setting forth new allegations against Point Judith. On April 30, 2008, Point Judith transmitted to the plaintiffs the disclosure report of Mr. Layfield — only six days after the aforesaid opportunity to visit the vessel (and the deposition of Mr. Robbins on the same day), and less than 30 days following the plaintiffs' April 3 disclosure of opinions of Mr. Robbins that operated against Point Judith.

The plaintiffs simply cannot be allowed to have matters both ways — to disclose expert testimony 39 days before trial, and then preclude the defendants from responding to it.

Attached as Exhibit 1 is a copy of the interrogatories of Point Judith, served on the plaintiff on March 29, 2007. Interrogatory No. 9 calls upon the plaintiffs to reveal their theories of liability, as follows:

> State precisely how you contend that water entered the hull during the Events, what act or omission of the Proponent you claim caused this, what you contend the Proponent should have done or not done instead, and what legal standard you claim was violated by the acts or omissions you attribute to the Proponent.

On September 17, 2007, plaintiffs served their one and only response to this interrogatory. It reads as follows: "Plaintiff Nicholas Picchione II has no knowledge with respect to this interrogatory. See report of William Robbins and Bruce Pfund." At that time, the plaintiff had put forward no expert disclosures whatsoever — as to either Mr. Pfund or Mr. Robbins or anyone else. Exhibits 2 and 3 are, respectively,

the expert disclosure reports of Bruce Pfund (dated November 1, 2007), and of William Robbins (dated November 6, 2007), both delivered to the defendants on November 9, 2007. Neither one expresses any opinion as to liability on the part of Point Judith.

Before these reports were delivered to the defendants, the parties had agreed to depose Mr. Pfund on November 19, 2007, because his schedule was tight. Once Exhibits 2 and 3 were available, the undersigned sent an email to counsel for the plaintiff (Exhibit 4), calling upon him to identify how he proposed to use the testimony to establish liability as against Point Judith. Exhibit 5 is an email from counsel for plaintiffs, essentially refusing the request in Exhibit 4.

Exhibit 6 is the further disclosure report of William Robbins (referred to above) — transmitted to the defendants on April 3, 2008. This was the first disclosure of expert testimony that expressed any opinions as to liability of Point Judith, and also the first expert disclosure that in any way touched upon the quantum of damages in the case. Exhibit 7 is the April 30th, 2008, disclosure report of surveyor Dennis Layfield on behalf of Point Judith.

Discovery schedules always provide for plaintiffs to disclose expert opinions first, to be followed by disclosures by defendants. This case is no exception. Plaintiffs here cannot expect to have the benefit of expert testimony without affording defendants the opportunity to respond and defend against it. Nothing that the Court has said or done to date has countenanced that outcome.

The plaintiffs' references to witnesses Joseph Stroker and Bud Smedberg are red herrings. Exhibit 8 is a copy of Point Judith's Initial Disclosures, in which Bud Smedberg was expressly identified. Point Judith offered to produce Bud Smedberg for deposition, but plaintiffs counsel made it clear (Exhibit 9) that he wished to depose only the individual who turned out to be Mr. Stroker.

Point Judith's disclosures in its Initial Disclosures were extensive and proper. Its obligation was only to identify persons with information that Point Judith would "use to support its claims or defenses . . . ." Fed. R. C. P 26(a)(1)(A). Point Judith properly complied with that obligation, especially in light of the exceedingly vague content of the plaintiffs' original complaint — which was so obviously deficient that plaintiffs have pending a motion to revamp it fundamentally. In short, there was no obligation on the part of Point Judith to have made any mention of Mr. Stroker before the time that plaintiffs began to call for his deposition.

Joseph Stroker has not worked for Point Judith for more than a year. When plaintiffs expressed an desire to depose him, Point Judith nevertheless took the trouble to locate him and coordinate a date for a deposition of him — sparing the plaintiffs the cost and trouble of putting him under subpoena. Plaintiffs then took that deposition on March 27, 2008 (only three days after the date for which they first noticed that deposition).

In Exhibit 7, Point Judith has fully and properly disclosed the opinions of Mr. Layfield, and has done so promptly in the wake of the disclosure of the opinions of

Mr. Robbins. It obviously would have been impossible to defend against the opinions of Mr. Robbins *before* they were made available on April 3, 2008. Plaintiffs motion is fundamentally unfair to Point Judith — an attempt to deny Point Judith the opportunity to defend against Mr. Robbins' testimony. The motion should be denied.

WHEREFORE, Point Judith respectfully urges that the plaintiffs' motion be DENIED.

Dated: May 5, 2008

**POINT JUDITH MARINA, INC.**
By its attorneys,
_/s/ Carl E. Fumarola_
Stephen T. Armato, R. I. Bar #6395
Michael Rauworth (pro hac vice)
Carl E. Fumarola, Esq., R.I. Bar #6980
Cetrulo & Capone LLP
The Heritage Building
321 South Main Street
Providence, RI 02903
Tel: (401) 274-7850
Fax: (401) 274-9670
Email: sarmato@cetcap.com
Email: mrauworth@cetcap.com
Email: cfumarola@cetcap.com

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that on this 5th day of May, 2008, I have served the above documents on the following counsel of record via ECF filing:

Frederick A. Lovejoy, Esq.
LOVEJOY & ASSOCIATES
276 Center Road
Easton, CT 06612-1604
LOVEJOYADM@aol.com

Robert Collins, Esq.
CLINTON & MUZYKA, P.C.
1 Washington Mall, Suite 1400
Boston, MA 02108
rcollins@clinmuzyka.com

_/s/ Carl E. Fumarola__________________
Stephen T. Armato, R. I. Bar #6395
Michael Rauworth *(pro hac vice)*
Carl E. Fumarola, Esq., R.I. Bar #6980
**CETRULO & CAPONE LLP**
The Heritage Building
321 South Main Street
Providence, RI 02903
Tel: (401) 274-7850
Fax: (401) 274-9670
Email: sarmato@cetcap.com
Email: mrauworth@cetcap.com
Email: cfumarola@cetcap.com