UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NORTHERN INSURANCE COMPANY OF NEW YORK AND NICHOLAS PICCHIONE II<br>Plaintiffs<br>v.<br>ALBIN MARINE, INC.; STANDISH BOAT YARD, INC. and POINT JUDITH MARINA, LLC.<br>Defendants | CIVIL ACTION NO. 06-190-S |

## REQUESTS FOR ADMISSION

**Proponents:** Defendant **Point Judith Marina, LLC** ("Pt. Judith" or "PJM")

**Recipients:** Plaintiffs **Nicholas Picchione II** ("Picchione" or "Owner") and **Northern Insurance Company of New York** ("Northern")(collectively "Plaintiffs")

Pursuant to Fed. R. Civ. P. 36, each above-named Proponent hereby propounds the following Requests For Admission, to be answered by each above-named Recipient, under oath with the time limits set by Rule 36, and subject to the fee and cost-shifting provisions of Fed. R. Civ. P. 37. In propounding these requests, each Proponent calls for compliance by each Recipient with the full scope of duty imposed by Rule 36, as interpreted by applicable case law, and as calling for supplementation as provided for in the federal rules. In the interests of brevity and clarity of the individual requests that follow, the individual requests are preceded by definitions and instructions that are hereby incorporated in the individual requests as if their text had been set forth in the individual requests themselves at full length.

## SPECIFIC DEFINITIONS

A. "Defendant" or "Proponent" or "Pt. Judith" or "PJM" means the defendant Point Judith Marina, LLC.

B. "Recipient" has the definition set forth above.

C. The "Vessel" is that vessel owned by Picchione and known by the name of *Everready*.

D. "Events" means and includes any and all acts, omissions, events, conditions, and/or occurrences alleged in plaintiff's complaint, including without limitation occurrences during the period April 22, 2005, through April 25, 2005.

## GENERAL DEFINITIONS AND INSTRUCTIONS

The following definitions apply to the interpretation of the requests that follow, except to the extent that these definitions are inconsistent with the standard definitions set forth in the Federal Rules of Civil Procedure. In the event of any inconsistency, the following are intended to supplement the effect of the standard definitions in the Federal Rules.

1. "Document" shall mean any record, information or recorded communication in whatever form, including without limitation, correspondence, books, pamphlets, periodicals, letters, memoranda, including any memorandum or report of a meeting or telephone or other conversation, invoice, account, credit, memo, financial statement, general ledger, subsidiary and supporting ledger, journal, diary, telegram, report, record, contract, agreement, study, draft, handwritten or other note, working paper, sketch, picture, plan, chart, paper, graph, index, tape, data sheet or data processing card, pro forma or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, and regardless of origin or location, your possession, custody or control of any The SSA, or in that of your agents, accountants or attorneys. "Document" also means all copies of documents, by whatever means made, if the copy bears any other marking or notation not found on the original.

2. "Communication" shall mean any written or oral transmission of fact, information or opinion, including, but not limited to, any utterance, notation or statement of any nature whatsoever, any conversation (whether by telephone otherwise), and any meeting and also including, but not limited to, correspondence, reports and documents as defined herein.

3. "Correspondence" shall include, but shall not be limited to, any letter, telegram, telex, TWX, notice, message, memorandum or other written communication or transcription or notes of a communication.

4. "Report" shall include, but shall not be limited to, any study, analysis, appraisal, inspection, survey, test, poll, memorandum or statistical or financial compilation of information.

5. The terms "relating to" shall mean concerning, mentioning, discussing, involving, pertaining to, connected with, relied upon, constituting, or in any way relevant to the indicated item.

6. "Person" shall mean and refer to any individual, corporation, partnership, joint venture, sole proprietorship, company or other entity.

7. "You" or "Your" shall mean the recipient and any individual acting on behalf of the same.

8. "And" as well as "or" shall be construed either conjunctively or disjunctively so as to bring within the scope of the request any documents that might otherwise be considered outside the scope of the request.

9. Whenever there is a request to identify a document, the term "identify" shall mean to set forth:

(a) its author or authors;

(b) its addressee or addressees and all other person receiving copies;

(c) the type of document (i.e., letter, memorandum, contract, report, accounting records, etc.);

(d) a description of the document's contents;

(e) the document's present location; and

(f) the person in possession of the document.

10. Whenever there is a request herein to identify a communication, the term "identify" shall mean to set forth:

(a) the date, nature and purpose of such communication;

(b) each person who originated, received or participated in such communication;

(c) the place or places where it occurred;

(d) the type of communication (i.e., letter, telegram, telephone or face-to-face conversations, etc.); and

(e) the substance of such communication.

11. Whenever there is a request herein to identify a fact, the term "identify" shall mean:

(a) give a statement of the fact; and

(b) identify each source for the fact. "Source" shall refer to both documents and persons from which information has been derived.

12. Whenever there is a request herein to identify a person, the term "identify" shall mean:

(a) give the person's full name;

(b) give the person's residential address; and

(c) give the person's present occupation or principal business activity and working address.

13. "Identify," when used with respect to items of evidence, means to state:

a) as to evidence in the form of testimony of a witness, the name, address and telephone number of the witness and the relevant matters that the witness observed or to which the witness is expected to testify;

b) as to evidence in the form of a document, the date, author, nature, subject matter and current location of the document;

c) as to physical or demonstrative evidence, a description of the object, its location, the name, address and telephone number of the person who has the power to authorize access to it, and the precise characteristic of the object that you will contend tends to establish the proposition for which you will advance it;

d) as to any other form of evidence that you will contend should be made available to the fact-finder in arriving at any conclusion pertinent to these proceedings, sufficient information to permit the undersigned to use appropriate discovery techniques to assess the effect of the evidence (including information sufficient to locate and recognize the item of evidence), and a brief summary of what you contend its relevance is.

14. Any word written in the singular is intended to be construed as plural and vice versa in every sense that is not meaningless; and any use of the conjunctive should be construed as also being in the disjunctive and vice versa, in every sense that is not meaningless.

## INDIVIDUAL REQUESTS FOR ADMISSION

1. Exhibit 1 (attached hereto and incorporated by reference) is a true and correct copy of the 2005 Summer Dockage/Rack Storage Agreement signed by Plaintiff Picchione.

2. Exhibit 1 is admissible in evidence.

3. Plaintiffs have no evidence that water entered the hull of the Vessel in any substantial amounts during the Events by way of any fitting or deliberately-created hole or opening in the hull.

4. Plaintiffs have no evidence that water entered the hull of the Vessel in any substantial amounts during the Events by reason of any act or omission attributable to the Proponent.

5. Plaintiff Picchione was aboard the Vessel for several hours during the period following her launch in April 2005 and before her sinking.

6. Plaintiff Picchione had a mechanic, technician, or other contractor or vendor aboard the Vessel for several hours during the period following her launch in April 2005 and before her sinking.

Dated: March 29, 2007

**POINT JUDITH MARINA, INC.**
By its attorneys,

Michael Rauworth

Stephen T. Armato, R. I. Bar #6395
Michael Rauworth *(pro hac vice)*
**CETRULO & CAPONE LLP**
The Heritage Building
321 South Main Street
Providence, RI 02903
Tel: (401) 274-7850
Fax: (401) 274-9670

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that on this 29th day of March, 2007, I have served the above documents on the following counsel of record via postage pre-paid United States First Class Mail:

Frederick A. Lovejoy, Esq. **And By Federal Express**
LOVEJOY & ASSOCIATES
276 Center Road
Easton, CT 06612-1604

Gregory B. Klaiber, Esq.
39 Bellevue Avenue
Newport, RI 02840
gbklaiber@hotmail.com

Stephen I. Lipman, Esq.
45 Bromfield Street, 8th Floor
Boston, MA 02108-4106
Lipman.law@cox.net

Michael Rauworth

Stephen T. Armato, R. I. Bar #6395
Michael Rauworth *(pro hac vice)*
**CETRULO & CAPONE LLP**
The Heritage Building
321 South Main Street
Providence, RI 02903
Tel: (401) 274-7850
Fax: (401) 274-9670
Email: mrauworth@cetcap.com
Email: sarmato@cetcap.com

Point Judith Marina LLC

P.O. BOX 129 • WAKEFIELD • RHODE ISLAND 02880 401 • 789 • 7189
*"Your Full Service Boatyard."*

2005 SUMMER DOCKAGE/RACK STORAGE CONTRACT

This dockage rental agreement is from April 15 05 until October 31 05

Rack rental is from May 1 _____ until October 15 _____

Owner: Nicholas Picchione

Address: PO Box 1220 City WARWICK State RI Zip 02886

Telephone: Home (401) 789-1571 (Cell) (401) 529-5757 Office (401) 738-7900

---

Boat Name EVEREADY Length 40 Beam 10' Draft 3.5'

Boat Make ALBIN Engine Mfgr. CAT H.P. 350

DOC.# OR STATE REG.__________ INSURANCE CERT.__________

---

**PAYMENT TERMS;**

**A. 30% deposit is Mandatory to hold your slip by November 1st with a signed contract**

**B. 1/3 of slip fee due by January 1st**

**C. Final payment due by March 15th**

**A valid certificate of insurance must accompany final payment.**

**RATES:**

Electricity will be billed monthly for the actual KWH used at a rate of .14.
Please note: Rate may be adjusted to reflect any increases from utility company

Rack Storage: Operates from 7:30 AM to 4:30 PM daily. You are entitled to one launch and haul per day during the season. Launching requires one hour notice. For use prior to 7:30 AM, we will launch you the previous day, prior to 4 PM. Boats will be hauled as they return to the dock. **NOTE: Due to limited space, rack boats cannot be left in overnight or throughout the day.** Prior to hauling your boat, you must lower all antennas and tops and put trim tabs in the "UP" position.

**Total Fees Due:** $ 5200- Pd in full **Date:** 9/20/04

**Fees Paid:** $ ______

**Balance Due:** $ ______

**Slip/Rack** # C33

Charge my ____VISA/MASTERCARD____AMERICAN EXPRESS____DISCOVER____SHELL

CARD#____________________EXPIRATION DATE__________

**Tenants certify that the printed matter on both front and back of this agreement has been read and the terms and conditions set forth herein are fully understood and acceptable.**

Signature: N. Picchione _____ G.S

Date: 9-29-04

White - Marina Copy Yellow - Customer Copy

EXHIBIT 1

1. The word "Marina" is [illegible] to indicate BELLA VIEW MARINA, LLC. or POINT JUDITH MARINA, LLC., their [illegible] employees, agents, operators and/or managers. The word "Tenant" is used here to indicate the owner (or his authorized representative or agent) of any boat or vessel stored, docked or moored at the Marina.
2. This Lease Agreement for seasonal dockage is for one vessel per slip plus one inflatable defined as a dinghy (not secondary boat or vessel) with a maximum length of 12 feet or for the winter storage of Tenant's vessel. Tenders and inflatables must be secured at the stern of one's vessel of off the bow to a piling. It must not float into another Tenant's slip.
3. The Marina reserves the right to lease or refuse to lease or rent storage space or dock space to any person for any reason in the best interest of the Marina or the patrons thereof.
4. Tenant acknowledges that he has inspected either the assigned slip or storage space and further acknowledges satisfaction therewith and acceptance "as is". Tenant acknowledges this agreement is not a bailment of Tenant's vessel but a lease of storage space or slip only and Marina's liability is limited solely to the maintenance and upkeep thereof.
5. Slip rentals and vessel storage:
   1. shall be strictly in accordance with published schedules and shall be paid in advance to cover a full season. Slip rentals shall not be cancelled unless a suitable replacement tenant can be obtained promptly, in which case proportional reimbursement for the unused seasonal rental less a five percent service charge will be made to the tenant.
   2. If it is considered by the Marina to be in the best interest of the Marina and/or its Tenants, the Marina reserves the right, after ten days notice, to cancel this contract with the tenant removing his boat forthwith. Proportional reimbursement will be made for the docking fee.
   3. Slip rentals and vessel storage payments are non-refundable except as provided herein.
6. To be admitted to and to continue as a tenant of the Marina, vessels must be:
   1. Used for pleasure only on Docks A and B;
   2. Registered, identified, marked, equipped and maintained as required by law and safe practice;
   3. Subject to periodic inspection by the Marina to determine the maintenance of proper safety conditions.
7. Any vessel entering the Marina facility immediately comes under the jurisdiction of the Marina and shall be berthed only where ordered and maneuvered as directed. Vessels entering the Marina under emergency shall be reported immediately by their owner(s) or representatives thereof to the Marina.
8. A Tenant expecting to have his boat out of a slip for an extended period shall notify the Marina in advance which may lease or use the slip for other purposes during this period. No Tenant may sub-lease or transfer any slip. Tenant must secure the written approval of the Marina for any vessel substitutions and pay additional charges if any.
9. All vessels shall be secured in their berths by the Tenants in a manner acceptable to the Marina or the Marina will adequately secure the vessel and assess a service fee. Lines, fender boards and fenders for securing vessels shall be provided by owner and shall be of such size and quality as to secure the vessel safely for the protection of others.
10. Tenants will provide the Marina with a set of main door or hatch keys and ignition keys. The vessel will only be entered by the Marina for an emergency or with the authority of the Tenant. No other person will be allowed on the vessel without the Tenant's permission.
11. All reasonable precautions will be taken by the Marina to ensure the safety of the tenant's property. However, the Marina assumes no responsibility of the safety of any vessel docked in the Marina and it is expressly agreed that the Marina will not be liable for any loss due to fire, theft, collision, accident, vandalism windstorm, high or low waters, hail, rain, ice or damage to said vessel or any act of God, its equipment or any property in or on said vessel however arising including the negligence of an employee of the Marina or of another patron. Tenant waives any and all claims for such loss or damage against the Marina, agrees to hold the Marina harmless from and against any such claim and to seek compensation from his own insurance policy for any such loss. Tenant agrees to have his vessel insured by complete marine coverage including liability. Each Tenant will be held responsible for damage caused by said Tenant or Tenant's vessel to other vessels in the Marina or to structures or facilities thereof.
12. In the event of a severe wind, rain, hail, ice storm, exceptionally high or low tide, or hurricane, the Marina will attempt to notify each Tenant in advance. HOWEVER, the Tenant or his agent shall remain solely responsible to take all emergency measures possible and the Marina shall not be responsible for said protection, damages to the Tenant's vessel or the provision of insurance coverage therefor and the Tenant holds the Marina harmless for any loss arising therefrom. In the event of an emergency Tenant authorizes Marina to move Tenant's vessel, if possible and practical, to a safer area. However, said authorization does not obligate the Marina to take any such action and Tenant agrees to indemnify and hold the Marina harmless from any and all liability, loss or damage arising out of the failure of the Marina to move said vessel.
13. The Tenant (and guests thereof) agrees to conduct himself at all times when on the property of the Marina or any vessel moored therein so as to create no annoyance, hazard or nuisance to the Marina and to other Tenants or interfere with or obstruct the rights of other patrons and Tenants. This involves observance of good housekeeping and sanitation practices and the use of garbage receptacles. Tenants, their guests and/or representatives or agents shall not discharge rubbish, debris, garbage, raw sewage, dead fish or other offal upon the docks or into the waters. All garbage and other refuse must be placed in the receptacles provided by the Marina. Further, Tenant shall observe and abide by all city, state and federal laws, ordinances, statutes and regulations.
14. Outside contractors, service organizations or individuals will not be permitted to undertake any work on vessels at the Marina without first notifying, registering with the Marina office and obtaining written permission therefrom. Charges for said outside work must be billed through the Marina office. The Marina reserves the right to stop any work on vessels if the Marina deems the work to be hazardous to the Marina, vessels or patrons. Outside contractors, service organizations or individuals must provide written evidence of insurance coverage and other terms and conditions as follows:
   1. Comprehensive general liability for three million dollars ($3,000,000.00) with products/completed operations and broad form CCL endorsements attached.
   2. Statutory workmens' compensation with one hundred thousand dollars ($100,000.00) in employers' liability and longshoreman and harbor workers coverage.
   3. Vehicle liability coverage - single limit five hundred thousand dollars ($500,000.00).
   4. Hold harmless agreement indemnifying the Marina from any loss or injury, including death, to any person or the property of any person or contractor while working on or about any said vessel of Tenant or on the premises of the Marina.
   5. The above policies can be listed on one certificate of insurance prepared by the contractor's agent and given to the Marina before work is allowed to proceed. Failure of the Tenant or representative of said vessel to comply with proof of insurance shall activate Article 31 of these terms of agreement.
15. The Marina cannot and does not guarantee the continuity of electrical service where provided. The use of harbor or Marina electrical outlets for the operation of power tools, battery chargers, welders, air conditions, heating units, etc., are prohibited except by special permission.
16. The use of torches, open flames, inflammable or toxic removers or any other hazardous equipment is prohibited.
17. The Marina will not be responsible for delays in hauling, launching, winter lay-up or commissionings, occasioned by inclement weather, tides or other circumstances beyond its control.
18. Tenant hereby covenants, warrants, and agrees to indemnify and hold Marina harmless from any loss or injury, including death, to any person, including the Tenant, arising out of any incident occurring on or about the Tenant's vessel, a vessel of any patron of the Marina or on the premises of the Marina.
19. Houseboats, commercial fishing vessels and other types of commercial craft will not be admitted to the Marina.
20. The Marina provides a fish cleaning station to clean all fish. At no time is fish to be cleaned on th vessels berthed at the Marina or on the Marina's docks. The fish cleaning station is for the exclusive use of the Marina Tenants.
21. The Tenant and his permanent crew may perform cosmetic work on the boat with the prior permission of the Marina. No work shall be performed on docks or slips without the permission of the Marina.
22. Noise shall be kept to a minimum at all times. Patrons shall use discretion in operating engines, generators, radios and television sets so as not to create a nuisance or disturbance.
23. Advertising or soliciting shall not be permitted in any part of the Marina. No "Broker" or "For Sale" signs allowed on Boats.
24. Swimming, diving or fishing shall not be permitted or allowed at from the docks or finger piers at any time. This policy will be strictly enforced for the safety of all patrons.
25. Tenants shall not place supplies, materials, accessories or debris on walkways and shall not construct thereon any lockers, chests, cabinets or similar structures.
26. Laundry shall not be hung on boats, docks or finger piers in the Marina.
27. No charcoal fire or open fire of any kind will be allowed within the confines of the Marina except at designated areas.
28. Dogs will be admitted to the Marina only under leash and must not run loose on the grounds or other vessels at the Marina.
29. Absolutely no roller-blading, skateboarding or using scooters on docks, parking lots or on walkways at any time by any person.
30. Young children shall be accompanied by adults at all times.
31. Vessels must be under power, not sail, when entering or leaving the Marina. Tenant will operate his vessel with due care for the safety of other vessels, property and persons and will be responsible for damages ain injuries which he, his guests, agents or servants may cause to other persons, vessels or property in and about the Marina.
32. All halyards must be tied away from the mast before leaving the vessel.
33. Tenant, his representative or agent is responsible that all radio antennas, biminis and convertible tops are properly stored. Tenant is further responsible for the proper removal and/or replacement of any drain plugs and shall assume all responsibility for any damage, loss or consequences arising out of the failure to properly remove or replace said drain plugs and shall hold Marina harmless therefrom.
34. The Marina assumes no responsibility for the safety of any vehicle parked on the Marina premises and will not be liable for fire, theft or damage to the vehicle or its contents. All vehicles shall be parked only in designated areas. Vehicles of Tenant or his guests or representatives that block or impede the Marina common areas shall be charged a rate of $80.00 per hour if necessary, moved by the Marina at a cost charged to the Tenant.
35. This agreement does not include the providing by the Marina of any type of watchman or security service other than the Town of South Kingstown police and fire department services. The Tenant agrees that the Marina shall not be liable to the Tenant by reason of intrusion, theft, vandalism, arson or other criminal activity of any kind or degree on or about the Tenant's vessel whether by land or water.
36. The Marina does not permit disposal of oil, oil filters, rags or oil containers in any trash receptacle or dumpster. Any Tenant found to be improperly disposing of oil will be reported to the RI DEM and evicted immediately from the Marina.
37. BEWARE - THE VESSEL AND ITS CONTENTS MAY BE SOLD AT PUBLIC AUCTION FOR FAILURE TO PAY STORAGE, REPAIR OR SLIP RENTAL CHARGES PURSUANT TO RIGL 34-46-1 & seq. AND RIGL 6A-7-209 & seq.
38. Tenant, boat owner and/or representatives and agents thereof, hereby grant to the Marina a lien on the vessel thereof to insure the payment of all charges for repairs, gas, supplies, maintenance, or other related winter storage or slip rental fees. the vessels of Tenants who are more than fifteen days delinquent in the payment of any charges in excess of $50.00 may be subject to being hauled and place on land storage without notice until said charges are brought current. In the event said vessel is hauled, Tenants shall be charged hauling and blocking rates applicable to his vessel in addition to those charges already pending. ALL ACCOUNTS MORE THAN THIRTY DAYS DELINQUENT FROM BILLING SHALL BE CHARGED AN ADDITIONAL 1-1/2% PER MONTH INTEREST (18% PER ANNUM) ON THE UNPAID BALANCE.
39. In the event that the Marina engages the services of an attorney to enforce any provision of this agreement or to secure payment of delinquent charges then the Tenant shall pay in addition to the payment of all sums agreed to herein, the Tenant shall pay for all reasonable attorney fees, costs and expenses of suit in the enforcement/collection of all sums due pursuant hereto.
40. No vessel shall be launched until all outstanding bills have been paid in a manner acceptable to the Marina.
41. Any infraction or violation of the terms and conditions of this agreement, of rules and regulations posted in the Marina office or of any governmental ordinance, statute, law or regulation by the Tenant, his representative, agent or guests, shall, at the option of the Marina cancel this contract upon ten days notice and the Tenant shall immediately remove his vessel from the Marina. In the event the Tenant fails to remove his vessel the Marina shall remove the vessel from the slip and place same into storage at Tenant's expense.
42. This agreement encompasses all terms and conditions between the parties. Any modification or extension hereof shall be in writing unless otherwise set forth herein. This agreement shall be governed by Rhode Island law.